IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEX TURETSKY, as parent and guardian of minor J.T., individually and on behalf of J.T. and all others similarly situated,<br><br>      Plaintiff,<br><br>                 v.<br><br>AMERICAN DRUG STORES LLC d/b/a Osco Drug, AMERICAN STORES COMPANY, LLC d/b/a Osco Drug, NEW ALBERTSON'S, INC. d/b/a Osco Drug, ALBERTSON'S LLC d/b/a Osco Drug,<br><br>      Defendants. | Case No. 15-cv-10491<br><br>JURY TRIAL DEMANDED |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................................................1

II.     PARTIES ........................................................................................................................2

III.    JURISDICTION AND VENUE ....................................................................................5

IV.     FACTUAL BACKGROUND .........................................................................................5

        A.      FDA Approval of Generic Drugs............................................................................5

        B.      Approved Drugs, Including Therapeutically Equivalent Generics, Are
                Published in the "Orange Book"............................................................................7

        C.      In Addition to Concerta, the FDA Originally Approved Three Generic
                Concerta Products as Therapeutically Equivalent ...................................................8

        D.      The FDA Revoked its Approval for Two Generic Versions of Concerta
                and Removed Them From the Orange Book's List of Therapeutic
                Equivalent Drugs .................................................................................................9

        E.      Despite the FDA's Revocations, Defendants Continued to Dispense Non-
                Therapeutically Equivalent Generic Concerta to Plaintiff and the Members
                of the Class.......................................................................................................11

V.      CLASS ACTION ALLEGATIONS ............................................................................11

VI.     RESPONDEAT SUPERIOR .......................................................................................14

VII.    CAUSES OF ACTION.................................................................................................15

        A.      COUNT ONE - VIOLATION OF STATE
                CONSUMER FRAUD STATUTES......................................................................15

        B.      COUNT TWO - BREACH OF IMPLIED WARRANTIES.................................18

        C.      COUNT THREE – VIOLATION OF THE COMMON LAW OF
                UNJUST ENRICHMENT ...................................................................................19

VIII.   PRAYER FOR RELIEF ...............................................................................................20

IX.     JURY DEMAND..........................................................................................................20

Plaintiff Alex Turetsky, as parent and guardian of minor J.T., individually and on behalf of J.T. and all others similarly situated, through his undersigned counsel, based on personal knowledge as to the facts related to him and based on the investigation of counsel for all other allegations, complains of Defendants, AMERICAN DRUG STORES LLC d/b/a Osco Drug, AMERICAN STORES COMPANY, LLC, d/b/a Osco Drug, NEW ALBERTSON'S, INC. d/b/a Osco Drug, ALBERTSON'S LLC, d/b/a Osco Drug, alleging as follows:

## I.      INTRODUCTION

1.      In order to protect patient health, pharmacists are obligated to follow a physician's orders in fulfilling a physician's prescription order for a patient.  While pharmacists may substitute one therapeutically equivalent drug for another, they are prohibited from substituting and dispensing a drug that is not therapeutically equivalent to the prescribed drug. Indeed, a patient tendering a prescription from his or her physician to a pharmacy reasonably expects to receive either the specific drug prescribed by the physician or a therapeutically equivalent drug.

2.      Notwithstanding their clear obligations, Defendants filled prescriptions presented by Plaintiff and the Class Members for Concerta (methylphenidate hydrochloride extended-release) with generic drugs that are not therapeutically equivalent to Concerta.

3.      Concerta is a prescription product approved for the treatment of attention deficit hyperactivity disorder ("ADHD"), is taken once daily, and is supposed to deliver consistent, long-lasting ADHD symptom control over the course of 12 hours.  While there are three manufacturers that purport to manufacture generic Concerta, just one form of generic Concerta is currently approved by the U.S. Food and Drug Administration ("FDA") as being therapeutically equivalent.  In fact, the FDA has expressly found that the two other generic versions of Concerta

are not therapeutically equivalent because their effectiveness wears off much more quickly and

does not provide the consistent, long-lasting ADHD symptom control equivalent to Concerta.

4.      Even after the FDA expressly found in November 2014 that the generic versions

of Concerta manufactured by Mallinckrodt Inc. ("Mallinckrodt") and Kremers Urban

Pharmaceuticals Inc. ("Kudco") (the "Mallinckrodt Products" or "Kudco Products") were not

therapeutically equivalent to Concerta, Defendants nonetheless continued to substitute and

dispense the Mallinckrodt Products and/or Kudco Products in lieu of Concerta to Plaintiffs and

the Class.  Despite the fact that no pharmacy should substitute the Mallinckrodt and/or Kudco

Products in lieu of Concerta, the Mallinckrodt and/or Kudco Products still maintain a market

share of 30% in the market for therapeutically-equivalent generic Concerta.

5.      As a result of Defendants' actions and inactions as alleged further below, Plaintiff

and the members of the Class were damaged, having paid for a prescription drug that was

therapeutically-equivalent to Concerta but having received a non-therapeutically equivalent

product.  Thus, Defendants are liable to Plaintiffs and the Class as further detailed below.

## II.      PARTIES

6.      Plaintiff is a citizen of Chicago, Illinois.  After Plaintiff's minor son J.T. received

a prescription for Concerta from J.T's physician, on or about April 24, 2015, Plaintiff presented

the prescription to Defendants' Osco Drug Store # 3487 located at 2491 Howard Street,

Evanston, Illinois.  In doing so, Plaintiff expected to receive either brand-name Concerta or a

therapeutically-equivalent generic.  Plaintiff's expectations were objectively reasonable given the

superior position of knowledge and expertise of the pharmacists responsible for filling

prescriptions.  That same day, Defendants' pharmacy dispensed methylphenidate hydrochloride

ER tablets manufactured by Mallinckrodt to Plaintiff.  Plaintiff paid $173.13 for the prescription.

Plaintiff was damaged by Defendants' dispensing of this drug to fill the prescription for Concerta because the drug is not therapeutically-equivalent to Concerta.

7.     Albertson's is one of the largest food and drug retailers in the United States, operating 2,200+ stores across 33 states and the District of Columbia under a variety of names including Albertsons, Safeway, Vons, Jewel-Osco, Shaw's, ACME Markets, Tom Thumb, Randalls, United Supermarkets, Pavilions and Star Market and Carrs.  Albertson's operates through a variety of holding and/or operating companies.

8.     As applicable to the prescriptions raised by Plaintiff, Osco Drug # 3487 is an assumed name of Defendant American Drug Stores LLC, a Delaware limited liability corporation with its principal office located at 250 Parkcenter Boulevard, Boise, Idaho. Defendant American Drug Stores LLC operates and/or does business in Illinois as Osco Drug.

9.     Defendant American Drug Stores LLC's sole member is Defendant American Stores Company, LLC, a Delaware limited liability company with its principal office located at 250 Parkcenter Boulevard, Boise, Idaho.  Defendant American Stores Company, LLC operates and/or does business in Illinois as Osco Drug.

10.     Defendant American Drug Stores Company, LLC's sole member is Defendant New Albertson's, Inc., an Ohio corporation with its principal office located at 250 Parkcenter Boulevard, Boise, Idaho.  Defendant New Albertson's, Inc. operates and/or does business throughout the country, including in Illinois as Osco Drug.

11.     Defendant Albertson's LLC is a Delaware limited liability corporation with its principal office located at 250 Parkcenter Boulevard, Boise, Idaho.  Defendant Albertson's LLC operates and/or does business throughout the country, including in Illinois as Osco Drug.[1]

12.     Among other responsibilities, Defendants' pharmacists are responsible for dispensing prescriptions by following standard operating procedures and ensuring that Defendants' policies and laws and regulations in all prescription-related issues are followed, providing counseling on prescription medications, and following all control drug policies and procedures.

13.     Defendants' hold their pharmacies and pharmacists out to the public as occupying a superior position of knowledge regarding prescription fulfillment.  For example, Defendants' tout Osco's safety and trust in advertising their pharmacy services as well as their "careful assessment" of medication:

> Safety and trust.  Those are the feelings when you and your family are cared for by a Jewel-Osco pharmacist. Care happens in many ways at Jewel-Osco pharmacies.  Of course your prescriptions are reviewed and filled by our dedicated team of professionals with the time and commitment to carefully assess your medication history and explain each prescription or issue. . .
>
> So, when you visit your Jewel-Osco Pharmacy, you can rest assured that you will receive the best care available. Safety and trust. It means a great deal![2]

---

[1] Indicative of this is reflected on the Jewel Osco Pharmacy website (http://www.jeweloscopharmacies.com), where the copyright, privacy and website policies are identified associated with Albertson's LLC.  Albertson's "Safety and trust" language for the is copied on other of the company's pharmacy websites.  *See, e.g.,* Albertsons – Pharmacy http://www.albertsons.com/pharmacy (last visited Nov. 20, 2015); Acme Markets – Pharmacy http://www.acmemarkets.com/pharmacy (last visited Nov. 20, 2015); Shaw's – Pharmacy http://www.shaws.com/pharmacy (last visited Nov. 20, 2015).

[2] http://www.jewelosco.com/pharmacy/.

### III.  JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

15.     Venue is appropriate in this judicial district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Furthermore, some or all of Defendants, doing business as Osco Drug, are authorized to do and perform business in the State of Illinois.

### IV.  FACTUAL BACKGROUND

**A.     FDA Approval of Generic Drugs**

16.     Drugs are approved in this country under the Federal Food, Drug, and Cosmetic Act ("FDCA") through one of two processes, the New Drug Application ("NDA") process,[3] or the Abbreviated New Drug Application ("ANDA") process.[4]  The FDCA implements separate approval processes depending on whether a drug is a new drug or a follow-up generic drug hitting the market after the patent expires on the brand-name drug.

17.     First, for a drug company seeking to market and sell a new drug, a company must submit an NDA, including, among other things, information about the drug's ingredients, clinical testing and animal study results, information regarding the drug's manufacturing as well as exemplar product labeling and warnings.[5]  Such NDAs contain extensive scientific data regarding the safety and effectiveness of a drug.[6]

---

[3] *See* 21 U.S.C. § 355(b)(1) & (b)(2).

[4] *See* 21 U.S.C. § 355(j).

[5] *See generally* 21 U.S.C. § 355.

[6] 21 U.S.C. § 355(a), (b).

5

18.     Alternatively, for a drug company seeking to market and sell a generic version drug of a previously approved new drug, a company must submit an ANDA, including, among other things, information about how the generic drug is to be used, information showing that generic version of the brand-name drug has the same active ingredient(s), dosage form, route of administration, strength, conditions of use, and with certain exceptions, labeling.[7]

19.     An ANDA must also contain information demonstrating that the proposed generic is "bioequivalent" to the brand-name drug, looking to whether the "rate and extent of absorption" of the two drugs are significantly different.[8]

20.     A generic drug is considered bioequivalent if the two drugs are not significantly different.  A generic drug must be bioequivalent to be considered therapeutically equivalent to the brand-name drug.[9]

21.     Furthermore, drug products are considered pharmaceutical equivalents if they contain the same active ingredients, are of the same dosage form and route of administration, and are identical in strength or concentration.[10]

22.     The FDA must approve the ANDA unless it finds that there is insufficient evidence of the foregoing or there is inadequate information to ensure the identity, strength, quality, and purity of the drug.[11]

---

[7] *See, e.g.*, 21 U.S.C. § 355(j)(2)(A) & 355(j)(4); *see also* 21 C.F.R. § 314.94.

[8] *See generally* 21 U.S.C. § 355(j)(4)(F); 21 U.S.C. § 355(j)(8)(B); 21 C.F.R. § 314.127(a)(6)(i).

[9] 21 U.S.C. § 355(j)(8)(B)(i).

[10] *See* 21 C.F.R. § 320.1(c); "Orange Book" preface at vi-vii, APPROVED DRUG PRODUCTS WITH THERAPEUTIC EQUIVALENCE EVALUATIONS (U.S. Dept. of Health and Human Servs. Food and Drug Admin. Ctr. for Drug Evaluation and Research) (35th ed. 2015).

[11] *See, e.g.*, 21 U.S.C. § 355(j)(2)(A) & 355(j)(4); *see also* 21 C.F.R. § 314.94.

**B.      Approved Drugs, Including Therapeutically Equivalent Generics, Are Published in the "Orange Book"**

23.      Once drugs are approved, pharmacies (and the general public) are informed about which drugs are approved and which drugs are therapeutic equivalents.

24.      As commanded by the FDCA, the FDA publishes a list of drugs that have been approved for safety and effectiveness.[12]

25.      The FDA does so via the *Approved Drug Products with Therapeutic Equivalence Evaluations*, also referred to as the "Orange Book," which "identifies drug products approved on the basis of safety and effectiveness" under the Federal Food, Drug, and Cosmetic Act and "contains therapeutic equivalence evaluations."[13]

26.      The FDA makes a printed version of the Orange Book publicly available on its website,[14] plus a separate Orange Book database which is updated daily to timely provide consumer information on generic drugs as new generic approvals occur.[15]

27.      Drug products are considered "pharmaceutical equivalents" if they contain the same active ingredient(s), are of the same dosage form, route of administration and are identical in strength or concentration.  Pharmaceutically equivalent drug products are formulated to contain the same amount of active ingredient in the same dosage form, and to meet the same standards (i.e., strength, quality, purity, and identity), but they may differ in characteristics such as shape, scoring, configuration, release mechanisms, packaging, excipients (including colors, flavors, preservatives), expiration time, and, within certain limits, labeling.[16]

---

[12] *See* 21 U.S.C. § 355(j)(7)(A)(i)(I)-(III).

[13] Orange Book preface, at iv.

[14] http://www.accessdata.fda.gov/scripts/cder/ob/eclink.cfm

[15] http://www.accessdata.fda.gov/scripts/cder/ob/default.cfm

[16] *See* Orange Book Preface, at vii.

28.     Drugs are considered to be therapeutically equivalents "only if they are pharmaceutical equivalents and if they can be expected to have the same clinical effect and safety profile when administered to patients under the conditions specified in the labeling."[17]

29.     The Orange Book contains therapeutic equivalence evaluations, presented them via two-letter codes indicating the basis for the evaluation made (e.g., AA, AB, BP, BX). Generally, "A codes" and "B codes" are used to classify whether are therapeutically equivalent to another listed drug.  Those drugs that are therapeutically equivalent are listed with a two-letter code starting with "A."  Drugs *not* considered by FDA to be therapeutically equivalent are listed with a two-letter code starting with "B."

30.     Orange Book designations are the recognized standard throughout the United States for determining whether a pharmacy may substitute one drug for another.

31.     Under various but similar state regulatory mechanisms, pharmacists cannot lawfully substitute non-therapeutically equivalent generic drugs for brand name drugs.[18]

32.     Thus, FDA's designation of a generic drug with a "B code" effectively renders the drug unsellable and unmarketable.

## C.     In Addition to Concerta, the FDA Originally Approved Three Generic Concerta Products as Therapeutically Equivalent

33.      Methylphenidate hydrochloride extended-release tablets - currently manufactured and marketed by Janssen Pharmaceuticals, Inc. under the brand name Concerta - has been an FDA-approved drug since August 2000.

---

[17] *Id.*

[18] *See, e.g.,* 225 Ill. Comp. Stat. 85/25.

34.     Methylphenidate hydrochloride extended-release tablets are prescribed for the treatment of attention deficit-hyperactivity disorder (ADHD) in adults and children ages six and older.[19]

35.     In addition to the brand-name product Concerta, three other generic versions of Concerta have been approved, though as further described below, two generic versions have since been removed from the approved list as not therapeutically equivalent generics.

36.     First, in addition to its brand name product, Janssen manufactures a generic version of Concerta, which is marketed by Actavis under a licensing agreement.

37.     Second, Mallinckrodt received FDA approval of its abbreviated new drug application (ANDA) for generic Concerta on December 28, 2012, for the 27-, 36-, and 54-milligram strengths.

38.     Third, Kudco received FDA approval of its ANDA for generic Concerta on July 9, 2013, for the 18- and 27-milligram strengths, and September 23, 2013, for the 36- and 54-milligram strengths.

## D.     The FDA Revoked its Approval for Two Generic Versions of Concerta and Removed Them From the Orange Book's List of Therapeutic Equivalent Drugs

39.     The FDA began to receive reports of lack of effectiveness of the Mallinckrodt and Kudco Products shortly after the initial approvals of each product, in December 2012 and July 2013, respectively.[20]

40.     Between May 2013 and June 2014, the FDA Adverse Event Reporting System database received reports of patients describing insufficient therapeutic effect, with nearly 200 reports about the Mallinckrodt Product and over 100 reports about the Kudco Product.[21]

---

[19] http://www.fda.gov/Drugs/DrugSafety/ucm422569.htm.

[20] http://www.fda.gov/Drugs/DrugSafety/ucm422569.htm.

41.     The FDA's Office of Generic Drugs thus conducted a multi-disciplinary review of the generics, which included (1) an evaluation of adverse event reports, (2) a review of the data submitted with the ANDAs, (3) testing of the drug products in FDA labs, including drug stability and dissolution testing to determine the drug release rate and the stability of the two methylphenidate isomers and their degradation products,[22] and (4) broad interdisciplinary consultation with FDA physicians, pharmacists, chemists, and other agency scientists and experts to discuss the new information.

42.     These efforts raised concerns that the Mallinckrodt and Kudco Products do not produce the same therapeutic benefits as the brand-name product, Concerta.[23]

43.     Specifically, while all methylphenidate hydrochloride extended-release products approved as generics for Concerta are intended to release the drug in the body over a period of 10 to 12 hours, allowing for a single-dose product that is consistent with the effect of a three times per day dose of immediate-release methylphenidate hydrochloride, the Mallinckrodt and Kudco Products deliver drug in the body at a slower rate during the 7- to 12-hour range. The diminished release rate affects the consistent, longer-term control of ADHD symptoms.[24]

---

[21] http://www.fda.gov/Drugs/DrugSafety/ucm422569.htm.

[22] Degradation products are unwanted chemicals that can develop during the manufacturing, transportation, and storage of drug products and can affect the efficacy of pharmaceutical products.  *See generally* Samia Rocha de Oliveira Melo, et al., *Advice on Degradation Products in Pharmaceuticals: A Toxicological Evaluation,* PDA J. of Pharm. Science and Tech., vol. 68, no. 3 221-238 (May/June 2014) (available at http://journal.pda.org/content/68/3/221.abstract).

[23] http://www.fda.gov/Drugs/DrugSafety/ucm422568.htm.

[24] http://www.fda.gov/Drugs/DrugSafety/ucm422568.htm.   The FDA's action followed complaints by patients.  *See, e.g.,* Gina Pera, *Victory! Concerta Generics Downgraded!,* ADHD Roller Coaster (Nov. 13, 2014), http://www.adhrollercoaster.org/tools-and-strategies/victory-concerta-generics-downgraded/ ("The FDA announced today that the two approved generic versions of Concerta manufactured by Mallinckrodt Pharmaceuticals and Kudco have been downgraded.  It's horrifying that so many people have already been adversely affected, and

10

44.     As a result, on November 13, 2014, the FDA changed the therapeutic equivalence ratings for the Mallinckrodt and Kudco Products from AB to BX.  This means these products are no longer therapeutically equivalent to Concerta, nor can be recommended as automatically substitutable at a pharmacy (or by a pharmacist) for Concerta.

**E.     Despite the FDA's Revocations, Defendants Continued to Dispense Non-Therapeutically Equivalent Generic Concerta to Plaintiff and the Members of the Class**

45.     Since the FDA's actions, sales of the Mallinckrodt and Kudco Products continue to make up a significant portion of the market sales.  As of May 2015, Mallinckrodt and Kudco continued to hold approximately 30% of market share for generic Concerta, with Actavis holding the remaining 70%.[25]

46.     Despite the fact that the Mallinckrodt and Kudco generic Concerta products are not therapeutically equivalent with Concerta, Defendants continue to dispense the Mallinckrodt and Kudco Products.

## V.     CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of himself, and as a class action under to Federal Rules of Civil Procedure 23(a) and (b) (3), on behalf of the following class (the "Class"):

> All persons in the United States who were prescribed Concerta (methylphenidate hydrochloride ER) or its therapeutically-equivalent generic but received and paid for generic methylphenidate hydrochloride ER products manufactured by Mallinckrodt Inc. or Kremer Urban Pharmaceuticals Inc., and

---

without warning, not to mention having their concerns dismissed by some pharmacists.  'It's the same as the brand,' some pharmacists said.  'No, it's not!' we said.  And the FDA heard us.").

[25] According to the New York Times, in or about November 2014, Actavis held approximately 50% of the market for generic Concerta, with Mallinckrodt and Kudco occupying the remaining market share.  By May 2015, Activis' share had grown to approximately 70% of the market.  *See* Katie Thomas, *Generic A.D.H.D. Drug, Not Equivalent to the Brand, Is in Use Anyway,* N.Y. TIMES, June 16, 2015.

> dispensed by Defendants and/or their parents or subsidiaries, between November 13, 2014 and the present.
>
> Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, Defendants' legal representatives, predecessors, successors, assigns, and employees, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

48.     The definition of the Class is unambiguous.  Plaintiff is a member of the Class he seeks to represent.  Members of the Class can be identified using Defendants' records and other information kept by Defendants in the usual course of business and/or in the control of Defendants.  Records kept by Defendants identify the Class members who purchased the non-therapeutically equivalent methylphenidate hydrochloride ER products.  The members of the Class can be notified of the Class action through direct mailings based on address lists maintained in the usual course of business by Defendants.

49.     Pursuant to Rule 23(a)(1), Class members are so numerous that their individual joinder is impracticable.  The precise number of Class members is unknown to Plaintiff, but that number greatly exceeds the number considered in this judicial district to make joinder impossible.

50.     Pursuant to Rule 23(a)(2) and (b)(3), questions of fact and law, except as to the amount of damages each member of the Class sustained, are common to the Class.  Common questions of law and fact predominate over the questions affecting only individual Class members.  Some of the common legal and factual questions include:

      a.     Whether Defendants dispensed non-therapeutically equivalent methylphenidate hydrochloride ER products;

b.      Whether Defendants were in a position of superior knowledge as to whether the Mallinckrodt Products and/or Kudco Products were therapeutically equivalent to Concerta;

c.      Whether Defendants were statutorily prohibited from substituting non-therapeutically equivalent methylphenidate hydrochloride ER products;

d.      Whether Defendants' dispensing non-therapeutically equivalent methylphenidate hydrochloride ER products violated the consumer protection law of various states;

e.      Whether Defendants' dispensing non-therapeutically equivalent methylphenidate hydrochloride ER products breached the implied warranty of merchantability law of various states;

f.      Whether Defendants were unjustly enriched by dispensing non-therapeutically equivalent methylphenidate hydrochloride ER products; and,

g.      The nature and extent of damages and other remedies to which Defendants' conduct entitles Plaintiff and the Class members.

51.      Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class members. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

52.      The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct. Each Class member purchased non-therapeutically equivalent methylphenidate hydrochloride ER products.

53.     Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff, like other members of the Class, purchased non-therapeutically equivalent methylphenidate hydrochloride ER products.  Plaintiff was subject to, and was financially harmed by, a common policy and practice applied by Defendants to all Class members.

54.     Pursuant to Rule 23(a)(4) and (g)(1), Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is familiar with the basic facts that form the bases of the Class members' claims.  Plaintiff's interests do not conflict with the interests of the other Class members that he seeks to represent.  Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously.

55.     Pursuant to Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

56.     Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

## VI.     RESPONDEAT SUPERIOR

57.     The pharmacists filling the prescriptions of Plaintiffs and the members of the Class were employed by and/or acting as the employees of Defendants and fulfilled the

prescriptions in the ordinary course of their employment as pharmacists for Defendants. At all times relevant, Defendants are liable for the acts of its agent and/or employee pharmacists who ultimately fulfilling the prescriptions of Plaintiffs and the members of the Class in accordance with Defendants' policies on the doctrines of apparent or actual authority, imputed liability, and/or respondeat superior.

## VII.    CAUSES OF ACTION

### A.    COUNT ONE - VIOLATION OF STATE CONSUMER FRAUD STATUTES

58.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff.

59.    Plaintiff and the members of the Class are individuals that paid for purchases of the Mallinckrodt Products or Kudco Products for personal, family, or household purposes.

60.    Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the promotion and sale of the Mallinckrodt Products or Kudco Products.

61.    Defendants violated this duty by misrepresenting the characteristics, uses, benefits, quality, and intended purposes of the Mallinckrodt Products or Kudco Products. Indeed, by dispensing the Mallinckrodt Products or Kudco Products, Defendants represented that the products had characteristics and/or uses that they did not have.

62.    Plaintiff and members of the Class were directly and proximately injured by Defendants' conduct and would not have paid for the Mallinckrodt Products or Kudco Products had Defendants properly filled their prescriptions.

63.    Defendants' deceptive representations and material omissions to Plaintiff and the proposed Class members were, and are unfair and deceptive acts and practices.

64.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiff and the proposed Class members.

65.     As a proximate result of Defendants' misrepresentations and omissions, Plaintiff and the proposed Class members have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

66.     Defendants' actions, as complained of herein, constitute unfair compensation or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of various state consumer protection statutes listed below.

67.     Individually, Plaintiff seeks to recover under the law of his home state of Illinois. At class certification, Plaintiff will seek redress for Class members under other states' consumer protection statutes, including:

      a.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. § 45.50.471, *et seq.*;

      b.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq.*;

      c.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE § 48-88-101, *et seq.*, including § 4-88-113(f), and § 4-88-102(5);

      d.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200, and CAL. CIV. CODE § 1770, *et seq.*  At this time Plaintiff seeks injunctive relief only on this claim.  A letter pursuant to CAL. CIV. CODE § 1782 was sent to Defendants, and Plaintiff will amend if needed to seek damages;

      e.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of COLO. REV. STAT. § 6-1-105, *et seq.*, including § 6-1-113(1)(c) and § 6-1-102(b);

      f.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 DEL. CODE § 2511, *et seq.*, including 6 DEL. CODE § 2512;

      g.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. CODE § 28-3901, *et seq.*, including § 28-390(1);

h.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. § 501.201, *et seq.*;

i.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*, including § 48-602;

j.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of INDIANA CODE ANN. § 24-5-0.5-3;

k.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. § 501/1, *et seq.*;

l.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. ANN. Tit. § 59205-A;

m.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CONN. LAW CODE § 13-101, *et seq.*, including § 13-101(h);

n.  Plaintiff will assert, after the period for the present demand letter has passed, that Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Ch. 93A § 1, *et seq.*;

o.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. STAT. § 445.901, *et seq.*, including § 445-902(c);

p.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*, including § 59-1601(1);

q.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903, *et seq.*;

r.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. § 358-A:1, *et seq.*, including § 358A:1(1);

s.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. STAT. ANN. § 57:8-1, *et seq.*, including § 56:8-1(d);

t.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*;

u.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, *et seq.*, including § 51-15-01(4);

v.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*, including § 646.605(4);

w.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. STAT. § 201-1, *et seq.*, including § 201-2(2);

x.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODE LAWS § 37-24-1, *et seq.*, including § 37-24-1(8);

y.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE ANN. § 13-1 1-1, *et seq.*;

z.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq.*;

aa.  Defendants have engaged in unfair competition or unfair, deceptive acts or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*, including § 19.86.010(1); and

68.  Plaintiff and members of the Class were injured by Defendants' conduct because Plaintiff and members of the Class would not have paid for the Mallinckrodt Products or Kudco Products, absent Defendants' conduct. Plaintiff and Class members are entitled to damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unfair practices and to the relief set forth below.

69.  Plaintiff has provided notice to the Attorney General where required by state statute and has sent pre-suit demand letters where appropriate.

## B.   COUNT TWO - BREACH OF IMPLIED WARRANTIES

70.  The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff. Individually, Plaintiff seeks to recover under the law of his

home state of Illinois, 810 Ill. Comp. Stat. 5/2-314. At class certification, Plaintiff will seek

redress for Class members under other states' implied warranty laws.

71. At the time Defendants dispensed the Mallinckrodt and Kudco Products,

Defendants knew of the use for which Concerta was intended and impliedly warranted Concerta

to be of merchantable quality and fit for such use.

72. Defendants knew, or had reason to know, that Plaintiff and/or his physician would

rely on Defendants' judgment and skill in filling Plaintiff's Concerta prescriptions.

73. Plaintiff and/or his physicians reasonably relied upon the skill and judgment of

Defendant as to whether the Mallinckrodt and Kudco generic Concerta products were of

merchantable quality and fit for their intended use.

74. Contrary to such implied warranties, the Mallinckrodt and Kudco generic

Concerta products were not of merchantable quality or fit for their intended use, because the

Mallinckrodt and Kudco generic Concerta products were, and are, not therapeutically equivalent

and thus unfit for the ordinary purposes for which Concerta is used.

75. As a direct and proximate result of the breach of Defendants' implied warranties,

Plaintiff suffered financial damage.

76. Plaintiff provided written notice of the breach of Defendants' implied warranties

on November 20, 2015.

## C. COUNT THREE – VIOLATION OF THE COMMON LAW OF UNJUST ENRICHMENT

77. The preceding paragraphs of this Complaint are realleged and incorporated by

reference and asserted by Plaintiff. Individually, Plaintiff seeks to recover under the law of his

home state of Illinois. At class certification, Plaintiff will seek redress for Class members under

other states' unjust enrichment laws.

19

78.     To the detriment of Plaintiff and the Class members, Defendants have been, and continue to be, unjustly enriched as a result of the wrongful payments of Mallinckrodt and Kudco generic Concerta products, enrichments which Defendants collected through their representations that the products had characteristics and/or uses that they did not have.

79.     Defendants have been unjustly benefited through the wrongful collection of payments for Mallinckrodt and Kudco generic Concerta products to the detriment and at the expense of Plaintiffs and the Class members.

80.     Accordingly, Plaintiff and the Class members seek full restitution of Defendants' enrichment and benefits acquired as a result of the conduct alleged herein.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an order or judgment against Defendant including the following:

A.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by law;

B.      Pre-judgment and post-judgment interest on such monetary relief;

C.      Other appropriate injunctive relief;

D.      The costs of bringing this suit, including reasonable attorneys' fees; and

E.      All other relief to which Plaintiff may be entitled at law or in equity.

## IX.      JURY DEMAND

Plaintiff hereby demands trial by jury on all issues and claims pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 20, 2015          Respectfully submitted,

By**:**   */s/ Daniel J. Kurowski*
Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
Email: beth@hbsslaw.com
Email: dank@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

-with-

David Freydin
Timothy A. Scott
FREYDIN LAW OFFICES
8707 Skokie Blvd # 305
Skokie, IL 60077
Telephone: (866) 308-0051
E-mail: david.freydin@freydinlaw.com
E-mail: timothy.scott@freydinlaw.com

*Attorneys for Plaintiff as parent and guardian of
minor J.T., individually and on behalf of J.T. and all
others similarly situated.*

21